KEVIN D. HARLOW (SBN 265565)
*kevin.harlow@dlapiper.com*
RYAN M. ESTES (SBN 294876)
*ryan.estes@dlapiper.com*
KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@dlapiper.com*
MICHAEL P. BROWN (SBN 328579)
*michael.p.brown@us.dlapiper.com*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067-4735
Tel: 310.595.3000 | Fax: 310.595.3300

Attorneys for Plaintiff
Rising Edge Technologies (California), LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RISING EDGE TECHNOLOGIES (CALIFORNIA), LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JEFF JONES, an individual; RENEGADE ENERGY SERVICES, LLC, a California limited liability company; DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 8:23-cv-01236<br><br>**COMPLAINT**<br>1. **Breach of Contract**<br>2. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br>3. **Fraud**<br>4. **Negligent Misrepresentation**<br>5. **Violation of the Defend Trade Secrets Act**<br>6. **Misappropriate of Trade Secrets**<br>7. **Violation of California's Unfair Competition Law**<br>8. **Conversion**<br>9. **Defamation *Per Se* and Defamation *Per Quod***<br>10. **Intentional Interference with Contractual Relations**<br>11. **Intentional Interference with Prospective Economic Advantage**<br>12. **Negligent Interference with Prospective Economic Advantage**<br>13. **Inducing Breach of Contract**<br>14. **Unjust Enrichment**<br>15. **Breach of Fiduciary Duty**<br>16. **Breach of Duty of Loyalty**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Rising Edge Technologies (California), LLC (hereinafter, the "Company," or "Plaintiff") files this Complaint against Defendants Jeff Jones ("Jones"), Renegade Energy Services, LLC ("Renegade Energy"), and Does 1 through 10 (collectively "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over Defendants Jones and Renegade Energy because they are both residents of the state of California.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because both Defendants Jones and Renegade Energy reside in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because the acts, liabilities, and events giving rise to this action occurred within this District.

## INTRODUCTION

4. While employed by the Company as its Division Manager and earning well in excess of $500,000 annually, Jones engaged in a months-long scheme to start a competing business – the conspicuously-named Renegade Energy – by stealing the Company's trade secrets, customers, and employees. As a result, the Company brings this action to hold Jones accountable for his fraud, breaches of contract and fiduciary duties, theft and misappropriation of trade secrets, and other violations of federal and state law.

5. The Rising Edge Group is a provider of high-voltage electrical services, including construction and maintenance of electrical substations, power lines, and renewable sources such as wind, hydro, and solar. Originally founded in Alberta, Canada, the Rising Edge Group has more than twenty years of experience in the

1   high-voltage electrical services industry and has become one of the leading

2   providers of these services across North America.

3       6.    As the Rising Edge Group expanded across the United States and

4   eventually North America, they also sought to open a local operation center in

5   California.  Ultimately, this led to the creation of the Company as the Rising Edge

6   Group's operations center in California.

7       7.    The Rising Edge Group originally hired Jones as an employee in

8   Canada in 2012.  When they decided to build a local operations center in California,

9   the Rising Edge Group sought to place in its helm a manager with experience in the

10   high-voltage market and with the Rising Edge Group's business model and clientele.

11   Given his prior experience and familiarity, the Rising Edge Group turned to Jones

12   for this role.  Thus, in 2018, Jones agreed to relocate to California to open a new

13   division and serve as the Division Manager for the Company in California.

14       8.    As Division Manager – the Company's highest ranking in role in

15   California – Jones owed the Company both a fiduciary duty and a duty of undivided

16   loyalty.  Additionally, Jones entered into several contracts with the Company and,

17   by virtue of his important position, was also entrusted with access to the Company's

18   trade secrets and other proprietary information.

19       9.    However, as Plaintiff has recently learned, Jones intentionally

20   disregarded the duties he owed to the Company and instead sought to personally

21   profit at the Company's expense.  Among other improper conduct, Jones: (a)

22   misappropriated funds from the Company; (b) on Company time and using

23   Company resources and funds, built a competing business, under which only he

24   would personally profit, that offered the same services as the Company in the same

25   market; (c) attempted to poach Company employees to join his competing business,

26   while still working at the Company; (d) lied to Company employees that he had a

27   "deal" with the Company that he was authorized to start his competing business and

28   that it would replace the Company, when no such deal and no such plans existed in

1   order to induce employees to leave the Company; (e) misappropriated Company

2   trade secrets, including but not limited to Company customer lists and detailed

3   customer-specific information, in an attempt to kick-start his competing business,

4   and then used these stolen trade secrets in attempts to poach the Company's actual

5   and potential customers after his competing business was formed; and (f) misused

6   Company computers and online administrative systems to build out his competing

7   business.  Absurdly, Jones also used Company funds, as well as Company employee

8   time, to build his personal private residence.

9          10.    In sum, Jones breached the fiduciary duties and contractual obligations

10   that he owed to the Company and simultaneously committed fraud and theft in order

11   to create an unauthorized competing business in the same market.  While organizing

12   and operating this unauthorized competitor Jones misappropriated Company trade

13   secrets in an effort to jump start his business and give it a false sense of legitimacy.

14   In doing so, Jones caused substantial disruption and irreparable harm to Plaintiff's

15   business and its employees, exacerbated by Defendant Renegade Energy's

16   continued use of Company trade secrets.

17          11.    Thus, this action seeks to stop Defendants' continued harm and bring

18   Jones to account for his frauds, breaches, misappropriations, violations, and

19   interferences as set forth in detail herein.

20                              **THE PARTIES**

21          12.    Plaintiff is a company that offers various services related to high-

22   voltage electricity in the California market.  The Company is, and during the

23   relevant period was, a Delaware limited liability company with its principal place of

24   business in Newport Beach, California.

25          13.    Jones is an individual who, upon information and belief, is, and during

26   the relevant period was, a resident of Orange County, California.

27          14.    Renegade Energy is, upon information and belief, an energy company

28   that offers services related to high-voltage electricity in the California market that

1  was formed by, and is owned and operated by, Jones. Renegade Energy is, and

2  during the relevant period was, a California limited liability company with its

3  principal place of business in Newport Beach, California.

4      15.    Upon information and belief, Plaintiff alleges that Defendants Jones

5  and Renegade Services are alter egos of one another. Upon information and belief,

6  at all times mentioned herein, Jones was and is a principal and/or owner and/or

7  managing member of Renegade Energy, and in those capacities, Jones authorized,

8  directed, and participated in the fraudulent and intentional conduct alleged herein.

9  Upon information and belief, Plaintiff further alleges that: (a) Jones was and is a

10 principal and/or owner and/or managing member of Renegade Energy and Jones

11 knew that at the time Renegade Energy was formed, that Renegade Energy was

12 undercapitalized and would not have sufficient assets to pay its obligations; and (b)

13 Jones has used his control over Renegade Energy to manipulate assets and liabilities

14 for Jones' own personal benefit. Upon information and belief, Plaintiff further

15 alleges that adherence to the fiction of a separate existence of Renegade as distinct

16 from Jones would, under the circumstances, permit an abuse of the corporate

17 privilege, sanction fraud, and/or promote an injustice.

18     16.    Plaintiff is currently unaware of the true names and capacities of the

19 Defendants sued herein by the fictitious names Does 1 through 10, and therefore

20 sues those Defendants by such fictitious names. The full extent of the facts linking

21 such fictitiously sued Defendants is currently unknown to Plaintiff. Plaintiff is

22 informed and believes that each of the Defendants designated herein as a Doe was

23 responsible for the events and happenings hereinafter referred to, and thereby in

24 some actionable manner, legally and proximately caused the hereinafter described

25 injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to

26 amend this Complaint to show the Doe Defendants' true names and capacities after

27 the same have been ascertained.

28 / / /

17.     Plaintiff is informed and believes that, at all times mentioned herein, Defendants, including Does 1 through 10, inclusive, were agents, servants, employees, co-conspirators, aiders and abettors, successors in interest, and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment and/or venture.  Each of the Defendants designated herein as Doe aided and abetted, conspired with, and/or took part in and participated with each Defendant in all matters referred to herein, and was in some manner responsible for the injuries and losses suffered by Plaintiff.

## FACTUAL ALLEGATIONS

**Rising Edge Group Organizes the Company to Establish a Foothold in the Critical California Market and Solidify Its Presence in the United States.**

18.     The Rising Edge Group is a portfolio of companies providing high-voltage electrical services, including construction and maintenance of electrical substations, power lines, and renewable sources such as wind, hydro, and solar. Originally founded in Alberta, Canada, the Rising Edge Group has more than twenty years of experience in the high-voltage electrical services industry and is one of the leading providers of these services across North America and the Caribbean.

19.     In September 2016, the Rising Edge Group organized the Company as a Delaware limited liability company.  The Rising Edge Group established the Company so that the Rising Edge Group could gain entry into and operate within the critical United States power market, most importantly in one of its biggest markets: California.

**The Company Hires Jones to Lead Its California Operations.**

20.     To ensure that its California expansion succeeded, the Company sought to put together an experienced management team to staff its local operation. Ultimately, that search led the Company to Jones, an electrical management professional who had decades of experience overseeing high-voltage and other similar electrical projects.

21.     Prior to his appointment to a leadership role in California, Jones was an experienced employee of the Rising Edge Group who was familiar with its business model and its leading role in the market.  Prior to 2018, Jones was a North Area Manager, a middle-management role at one of the Rising Edge Group's Western Canadian entities.

22.     During his time in Canada, Jones promoted the idea of expanding the Rising Edge Group's footprint into California.  Prior to the Company's formation, in conversations with Rising Edge Group leadership and representatives, Jones extoled the virtues of the growing California and United States markets, stating that an expansion into both markets would help to grow the business.  Moreover, Jones stated that he was open to relocate to California to lead the local operation, which also aligned with his stated desire to take on a higher-level and managerial role within the Rising Edge Group.  Ultimately, Jones agreed to serve as the Company's Division Manager and relocated to its offices in Newport Beach, California.

23.     The Company and Jones entered into an Employment Agreement, a true and correct copy of which is attached hereto as **Exhibit A** (hereinafter "Employment Agreement").  In relevant part, the Employment Agreement provided that Jones was to be hired as the Company's Division Manager, a senior management role, providing him with a generous annual salary of $565,000.

24.     The Employment Agreement further specified various conditions on Jones' employment.  Among others, Jones agreed to abide by the following:

a) <u>Non-Solicitation Agreement</u>
In consideration of being employed by [the Company], you [Jones] hereby agree and acknowledge that, to the extent permitted by law, for a period of 12 months after resignation or termination of employment for any reason, you [Jones] will not directly or indirectly entice, encourage, or otherwise ask other [the Company] employees to leave their current employment to work with or for another business that competes with [the Company].

/ / /

b) <u>Non-Compete</u>

While employed by [the Company], you [Jones] cannot provide any services either as an independent employee or independent consultant to any entity which is in direct competition with [the Company] or which operates in any field in which [the Company] has operated or in which [the Company] is likely to operate in the future.

c) <u>Non-Disclosure Agreement</u>

During the course of your [Jones] employment with [the Company] you may receive, conceive, create, review or develop information which is considered by [the Company] to be confidential or proprietary in nature including information relating to intellectual property development, improvements, know-how, specifications, drawings, cost data, process flow diagrams, customer and vendor lists, costs and pricing information, bills, ideas and/or any other material referring to the same (the "Confidential Information"). Both during and after the term of employment and thereafter:

(a) You [Jones] agree that Confidential Information is valuable to [the Company] since it is not generally know [sic] the [sic] public or other persons who can obtain economic value from its disclosure or use;

(b) You [Jones] will maintain the confidentiality of the Confidential Information and not disclose it or use it for any purpose other than the Purpose unless or until: (1) it becomes public knowledge through no act or omission by you; or (2) you receive the Confidential Information from an unrelated third person on a non-confidential informration [sic], whichever shall first occur.  You will use all reasonable precautions to keep the Confidential Information safe from unauthorized disclosure.

(c) You [Jones] agree to return all Confidential Information any time up on request of [the Company] and upon termination of your employment.

(d) The only purpose for which you [Jones] may use the Confidential Information is to benefit [the Company] (the 'Purpose'). You [Jones] will not use the Confidential Information in your own business nor will you sell or otherwise distribute the Confidential Information to third-parties or publically [sic] comment on the Confidential Information.

d) This Agreement contains the entire agreement between the parties [the Company and Jones], superseding in all respects any and all prior oral and written agreements or understandings pertaining to your [Jones] employment by [the Company] and can be amended or modified only by written instrument signed by both of the parties [the Company and Jones]. This Agreement takes precedent over any other documents referenced herein which may conflict with this Agreement.

25.    Although Jones did not immediately sign a copy of the Employment Agreement, he accepted it by his words and/or conduct. Specifically, the Employment Agreement provided that, "Should you [Jones] accept this offer, you will agree to the terms and conditions of employment set out in this offer," and that Jones' start date, should he accept this role, would be considered the date he first started working with Rising Edge Group so as to preserve his Company benefits, including vacation time. Thereafter, Jones confirmed his acceptance to the Employment Agreement by informing Company officials that he agreed to its terms and by his conduct, including by taking on the role, performing the duties required by a Division Manager, and receiving the high salary in return.

26.    Additionally, the Employment Agreement provided that Jones' employment would be subject to the Company's Human Resource Policies and required Jones to comply with this policy at all times. A true and correct copy of the Company's Human Resource Policies, to which Jones agreed to be bound, is attached hereto as **Exhibit B** (hereinafter "HR Policy").

27.    Specifically, under the HR Policy, Jones agreed to the following:

"**HR 6103.10.01 Code of Conduct**
**Procedures**
In accepting employment with REG, an employee agrees to observe and carry out as a condition of employment the following responsibilities:
   • To safeguard REG [The Rising Edge Group's] and client's confidential information, including systems, software, procedures, technology, and employee information. Confidential information should be shared only with those in REG who have a legitimate business need to know. . ."

COMPLAINT

## HR 6103.10.26 Non-Disclosure Policy

**Roles/Responsibilities**

All employees of the Company have a responsibility to protect proprietary information of the Company.

Employees [are]

- Not to make copies or summaries of confidential information unless authorized by the Company
- Not to disclose information that may directly or indirectly affect the Company's reputation, brand or value
- Not to divulge or disclose Company information during or after resignation or termination to future employers

## HR 6103.10.27 Confidential and Proprietary Information Policy

From time to time, employees of REG may come into contact with confidential information, including but not limited to information about REG's employees, suppliers, finances and business plans. Employees are required to keep any such matters that may be disclosed to them or learned by them confidential.

Furthermore, any such confidential information, obtained through employment with REG, must not be used by an employee for personal gain or to further an outside enterprise.

**Roles/Responsibilities**

All employees of REG have a responsibility to protect proprietary information of REG which includes using information obtained to solicit business away from REG upon resignation or termination of employment.

Employees [are]

- Not to directly or indirectly entice any business from clients or customers of REG.
- Not to directly or indirectly entice, encourage or ask employees of the Company to leave their current employment to work for a competing business of the Company.

## HR 6103.10.34 Outside Employment

**Roles/Responsibilities**

*Employees*

Employees should not engage or accept outside employment that may be deemed to be a conflict of interest to the Company. The outside employment should also not diminish the abilities of the employee to provide loyal and undivided service while performing their job duties at

the Company. Any outside employment that constitutes a conflict of interest is prohibited.

Employee should also be aware of the Non-Disclosure and Confidentiality of pertinent Company information that is not to be shared outside of the Company.

28.     Further, as a high-level manager exercising discretionary authority, Jones owed the Company fiduciary duties as a matter of law.  Likewise, as with all employees, as a matter of law Jones owed the Company a duty of loyalty.

29.     After entering into the Employment Agreement, Jones started in his role as the Company's Division Manager in charge of its California office on or about January 5, 2022.

**As Necessary to Conduct the Company's Business, The Company Exposes Jones to Company Confidential Information and Trade Secrets.**

30.     Commensurate with his role and in order to conduct the Company's business, the Company provided its confidential information and trade secrets to Jones.  At the time the confidential information and trade secrets were disclosed to Jones, Jones remained bound by the Employment Agreement's non-disclosure, non-compete, and other provisions.

31.     Specifically, the trade secrets that the Company provided to Jones included the following:

(a)     Comprehensive estimating systems and rates for project-specific pricing and execution from start-to-finish;

(b)     Intricate and non-public knowledge of the Company's customers, including key relationship contacts, the specific services the customers were interested in, negotiated pricing and discounts, and the specific submarket of customers interested in the narrow field of high-voltage services offered by the Company.

32.     For these categories, the Company provided Jones with access to and training on how to use its trade secrets so that Jones would be able to effectively

perform his role as the Company's Southern California Division Manager. Moreover, the Company's trade secret information was necessary to Jones' role; for example, the Company provided Jones with its customer list and estimating system/ rates so that he could pitch the Rising Edge Group's industry-leading high-voltage electrical services to clients in Southern California, a key function of his role as Division Manager.

33.     These categories qualify as trade secrets because: (a) they were secret and not known generally in the high-voltage industry; (b) they provide the Company with actual or potential independent economic value because they are secret and not known generally in this industry; and (c) the Company expended significant effort to keep them secret.

34.     None of the categories of information were known widely in the high-voltage industry.  In fact, both categories were part of what made the Company, and the Rising Edge Group generally, a market leader.  For example, other high-voltage providers do not have access to the estimating system and rate information that the Company uses to pitch work to new and existing clients, nor the names and non-public customer-specific information detailed above.

35.     Specifically, as to the customer list, in the years prior to and including Jones' employment, the Company went to great lengths and expense to compile its customer list; it spent thousands of dollars canvassing, researching, and pitching to potential customers.  And, after they serviced these customers, the Company spent additional money maintaining its relationship and compiling its information in one easy-to-read list.  Moreover, Jones was exposed to detailed, non-public customer-specific information, such as margins, pricing, negotiated discounts, and other information not available to the general industry.

36.     The Company's customer list and customer-specific information is of great value to its business because high-voltage services are a niche industry with limited customers and customer-specific price points.  As such, the Company went

to great lengths to keep the customer list secret and confidential and only provides the list to employees on an as-needed basis, requiring employees who access to the list, such as Jones, to sign non-disclosure agreements and agreements that prohibit the employee from utilizing the list for purposes other than the Company's business. Further, the Company instructed Jones, as it does to all employees, that the list is to be regarded as a trade secret, highly confidential, and is not to be disclosed to anyone outside of the Company.

37.    Lastly, the Company made extensive efforts to keep these categories secret.  In relevant part, the Company provided access to these categories to employees only a need-to-know basis, instructed employees entrusted with access to keep the information confidential, placed these categories, where applicable, behind password-protected administrative systems.

**In October 2022, Jones Abdicates His Role, Misappropriates Company Funds and Trade Secrets, and Organizes a Competing Company Named "Renegade Energy," and Begins Attempting to Poach Company Employees.**

38.    In October 2022, Jones devised a plan to abdicate his responsibilities to the Company, to build an entity that competed with it, to poach Company employees to staff his now-competing entity, to misappropriate Company funds to help his now-competing Company and benefit him personally, and to disparage and sabotage the Company in the process (thereby enhancing the ability of his new entity to unfairly compete for and poach the Company's employees and customers).

39.    From October 2022 onward, Jones' unlawful conduct in misappropriating Company funds, forming an entity to compete with it, poaching Company employees, stealing Company trade secrets, and other actions, were intentionally designed to harm the Company and to benefit Jones personally.

40.    Jones went to great lengths to keep his plans secret from Plaintiff. Specifically, Jones:

(a)    instructed Company employees to not tell the Company or its representatives about his conduct;

(b)    isolated the Company from oversight by Company management;

(c)    told employees to not reach out to the Company's leadership or participate in Company events;

(d)    encouraged employees to miss Company meetings;

(e)    directed employees to not come in to work when the Company's executive and management team was on site in California; and

(f)    presented false information about the status of the Company to its senior leadership personnel.

41.    On the whole, Jones' actions undermined the Rising Edge Group's senior management's ability to oversee its California office. As such, despite its diligence, the Company was unaware of Jones' schemes until an employee whistleblower brought the issues to management's attention.

42.    The reason Jones went to such lengths to keep management in the dark during this time was straightforward: he was using his position of trust and confidence with the Company, as well as his access to the Company's trade secrets, to help get his new entity – Renegade Energy – off the ground by scheming to steal the Company's money, employees, customers, and trade secrets.

43.    On November 8, 2022, Jones oversaw the formation and registration of Renegade Energy as a California limited liability company.

44.    Jones enlisted his wife, Chris Jones, to serve as Renegade Energy's representative and agent for service of process listed in its California Secretary of State filings.

45.    Making explicit his intentions to steal the Company's entire business from under the Company, Jones made Renegade Energy's business mailing and agent address as "825 W. 16th St., Newport Beach, CA 92663," which, tellingly, is the exact address of the Company's California office. Again, given that Jones concealed his efforts to create a competing company and took affirmative steps to

/ / /

1  keep the Company and its management in the dark, all of the above was unknown to

2  the Company at the time.

3       46.    In addition to unlawful conduct outlined above, during the same time

4  period, and while continuing to receive extremely lucrative compensation, Jones

5  abdicated his basic responsibilities to the Company and failed to comply with its

6  policies and standards, further harming it as a result.

7       47.    First, Jones failed to manage the Company's payroll properly and

8  provided blanket approvals for overtime and non-medical leaves of absence, which

9  Jones used to curry favor among employees in hopes of ultimately converting them

10  to work for his new entity.

11       48.    Second, Jones failed to pay outstanding bills from the Company's

12  vendors and failed to account for costs incurred on multiple projects.

13       49.    Third, Jones left the Company with hundreds of thousands of dollars in

14  credit card expenses which did not have appropriate expense documentation.

15       50.    Fourth, Jones delayed green card applications for the Company's

16  employees during this period and failed to notify relevant employees that their cases

17  would be pushed back as a result.

18       51.    Jones' decisions to not perform his role as Division Manager, and

19  instead to devote his energies to starting Renegade Energy, led to the Company

20  spending significant time and resources on forensic research and operations

21  management to undo the damage caused by Jones.

22       52.    Further, Jones told employees that the Company planned to cease

23  operating in California and that the Company gave Renegade the authorization to

24  conduct business in its place by taking over existing client relationships and

25  business.

26       53.    Specifically, in or around October 2022 and thereafter, in personal

27  conversations with Company employees and agents, Jones misrepresented the

28  following:

(a)     That the Company stole the employees' bonuses in 2022, as well
as stole $4 million out of the business in fall 2022, which
resulted in no employees getting large bonuses;

(b)     That the Company's leadership wanted to sell the Company's
business and leave California, which it believed to be a bad
market, as its employees were "too expensive," the market
generally was "too high risk," and that the Company did not
understand the market;

(c)     That the Company approved of his forming a new entity,
Renegade Energy, to essentially take the place of the Company;

(d)     That after the Renegade Energy entity was up and running, that
the Company employees who joined would have larger bonuses
under Renegade Energy than they did under the Company, that
some would receive shares in Renegade Energy, that certain
employees would be put into managerial roles within Renegade
Energy's offices, and that they would receive, in sum, more
money after the Company was "out of the way" and were "no
longer stealing" from them; and

(e)     That the Company had a "handshake" deal with Jones that he
would take control of the business and that the Company
approved the transition to the new entity.

These statements are false, and Jones made them knowingly, intentionally,
and/or with reckless disregard for their truth.

54.     Moreover, Jones used Company time and Company resources to build
out his competing entity, Renegade Energy, all directly in violation of his
obligations under the Employment Agreement, the HR Policy, and his fiduciary
duties and duty of loyalty to the Company.

/ / /

55.    Specifically, during this period, and while being paid and employed by the Company, Jones further improperly used the Company's resources to do the following:

(a)    Set up a payroll for the competing Renegade Energy entity;

(b)    Apply for a separate contractor's license for the competing Renegade Energy to operate as a C11/A1 entity (electrical/engineering), the exact same structure that the Company already operated in the state;

(c)    Set up a construction management system (Procore) for Renegade Energy, and asked the Company employees to review this system and vet it for any issues; and

(d)    Utilize the Company's estimators build and work on an estimating tool for Renegade Energy, resulting in substantial overtime and leaves of absence being paid by the Company to its employees.

56.    Jones forced Company employees to take on dual roles and multiple tasks, which dramatically increased the hours that Company employees were working and, as a result, increased employee stress levels, negatively impacted employees' mental health, and worsened employee productivity.

57.    During this same period, Jones also solicited employees from the Company to join Renegade Energy while he and they were both employed by the Company.  Specifically, Jones:

(a)    Told new employees, recently hired by the Company, to "come over to the new company [Renegade Energy] after it was up and running;"

(b)    Promised Company employees from all levels greater pay and benefits, including large raises, bonuses, and profit-sharing, if they were to leave the Company and join Renegade Energy;

     (c)    Promised Company employees more autonomy and authority, compared to their current positions, including leading and managerial positions in new offices, if they joined Renegade Energy;

     (d)    Talked to all senior staff of the Company and encouraged them directly to join Renegade Energy;

     (e)    Set up Renegade Energy emails for the Company employees and told them to conduct their business through those emails;

     (f)    Offered wives and significant others positions with Renegade Energy if employees joined him in the new, competing entity.

58.    Moreover, after forming Renegade Energy and attempting to staff it with Company employees, Jones tried to steal the Company's entire business out from under it. Jones used Company time and employee resources to take over the Company's business footprint in California. Jones used Company trade secrets, such as the Company's business model and non-public customer information to build new business relationships for Renegade Energy by convincing them to move their business to Renegade Energy.

59.    Lastly, beyond building out his competing Renegade Energy business, Jones also misappropriated Company resources and breached his duties to the Company to extract improper benefits in his personal life. In fact, Jones directed the Company's employees to help Jones build his personal house and used Company resources to do so. Specifically, during work hours in the work week, Jones commanded Company employees to commute to Jones' new personal home in Newport Beach and complete foundation and landscaping work—including pouring concrete and installing landscaping.

60.    After completing the work on Jones' home, the Company's employees asked Jones where they should submit their time to in order to get paid and how they should be reimbursed for costs. In response, Jones said that he would "take care of"

1  the employees' time and any receipts.  To do so, Jones misappropriated the

2  Company's funds and resources for his personal benefit.

3       **In Early April 2023, an Employee Sounds the Alarm on Jones' Actions.**

4       61.    As set forth above, Jones took substantial steps to conceal his disloyalty

5  from the Company and, as such, Company management was unaware of his

6  activities for some time.  Finally, on April 1, 2023 – months into Jones' scheme – a

7  Company employee reported Jones' recent actions, including his efforts to set up

8  Renegade Energy.

9       62.    Once it learned of this information. Plaintiff immediately investigated

10  the claims.  The Company's thorough investigation included interviewing

11  employees, reviewing the Company's financial, accounting, and other records, as

12  well as investigating Renegade Energy's organization and operation.

13       63.    Ultimately, the Company confirmed that Jones had engaged in

14  unlawful conduct to the detriment and the Company and to his personal gain,

15  consistent with the above allegations.

16                    **The Company Fires Jones.**

17       64.    On April 5, 2023, after investigating and confirming the veracity of the

18  employee's report of Jones' impermissible actions, the Company immediately

19  terminated Jones' and issued a Cease-and-Desist letter demanding that he

20  immediately cease engaging in the unlawful conduct that damages the Company.

21       65.    That same day, when employees escorted Jones out of the building

22  after his firing, Jones switched the SIM card out of his personal and work phones so

23  as to retain improper access to Company employees and contacts.  When the

24  Company asked Jones for his SIM card, Jones lied and stated that his personal

25  phone was merely for personal purposes and had nothing work-related on it.

26  However, the Company later discovered that Jones did so to move his work phone

27  and its contacts over to his personal phone.  Before discovering the problem and

28  cutting off his access to the work phone SIM card, Jones already reached out to

1  senior employees and continued his efforts to recruit them to the competing

2  Renegade Energy entity.  Significantly, while the Company fully respects the rights

3  of former employees to *fairly* compete after their employment was ended, this is not

4  such a case – Jones' efforts to recruit these employees was a continuation of the

5  unlawful and disloyal conduct that he engaged in while employed by the Company.

6       66.    After his dismissal and to date, Jones has failed to abide by or respond

7  to Plaintiff's April 5, 2023, Cease-and-Desist letter.

8       67.    Following Jones' termination, the Company confirmed the extent of

9  harm Jones inflicted on the Company and the fact that he continued to cause this

10 harm post-termination.  Further investigations revealed that:

11              (a)    Jones continues to use the Company's non-public and trade

12                     secret customer information to solicit existing and potential

13                     customers of high-voltage services to change their business to

14                     Renegade Energy;

15              (b)    Jones continues to attempt to solicit the Company's employees at

16                     every level to leave the entity and come over to Renegade

17                     Energy, continuing the unlawful scheme commenced while he

18                     was still an employee of the Company, including using the

19                     goodwill generated by his disloyal, fraudulent, and defamatory

20                     statements to employees during that time; and

21              (c)    Jones claims to continue to operate Renegade Energy out of the

22                     Company's existing office location by using this address on his

23                     business registration forms.

24       68.    As a result of Defendants' past and ongoing actions as described above,

25 Plaintiff was left with no choice but to file the instant lawsuit.

26 / / /

27 / / /

28 / / /

# FIRST CAUSE OF ACTION

## Breach of Contract

## (Against Defendant Jones)

69.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

70.     By their intentional acts and conduct, the parties entered into several valid and enforceable written contracts, including the Employment Agreement and the HR Policy.

71.     As a material and essential term of the Employment Agreement and HR Policy, Jones agreed that: (a) he would not "entice, encourage, or otherwise ask" the Company employees to leave their employment with the Company and join a competing entity; (b) he would not "provide any services either as an independent employee or independent consultant to any entity which is in direct competition with [the Company] or which operates in any field in which [the Company] has operated or in which [the Company] is likely to operate in the future;" and (c) he would "maintain the confidentiality of the Confidential Information and not disclose it or use it for any purpose other" than for the business of the Company.

72.     However, Jones failed to adhere to these policies.  During his time at the Company, Jones formed a competing company, Renegade Energy, and solicited the Company's employees to try and get them to switch over and work for his new, competing entity.  Further, to give his new and competing company a head start, Jones improperly utilized the Company's confidential information including its customer list and business plan.

73.     As a direct and proximate result of Jones' breaches of the Employment Agreement and HR Policy, Plaintiff has suffered damages in an amount to be determined at trial.

/ / /

/ / /

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against Defendant Jones)

74.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

75.    There is a covenant of good faith and fair dealing implied in every contract, including the Employment Agreement and HR Policy.  The implied covenant requires both parties to refrain from acting in any way that would injure the other party or impair their ability to receive the benefits under the agreement.

76.    Jones breached the implied covenant of good faith and fair dealing implied in the Employment Agreement and the HR Policy by, among other things: (a) forming an entity, Renegade Energy, that competed with the Company while he owed fiduciary, contractual, and other duties to the Company; (b) by forming this entity while he was employed by the Company and using his and other the Company employees' times to organize and build out the competing entity; (c) by misappropriating Company funds; (d) by ordering the Company employees to spend their time working on Renegade Energy and other projects that would personally benefit Jones, such as working on his house; (e) by misleading the Company employees and falsely misrepresenting that the Company had approved the formation of Renegade Energy and it taking over the same business as the Company; (f) while he was still employed by the Company, by soliciting the Company employees to join the new Renegade Energy entity; (g) by abusing overtime and paid leave policies to curry favor with the Company employees in order to make them more likely to join his new, competing entity, Renegade Energy; (h) by taking and/or misappropriating the Company's trade secrets without authorization, including but not limited to, its customer list and business plan, and taking copies of both to him after he left the Company; (i) by misusing the Company's trade secrets in building out his new business, including but not limited

to by using its customer list to contact existing and potential the Company customers and encouraging them to change their business to his new competing entity, Renegade Energy; and (j) by making misrepresentations and false statements concerning the Company to try and sow dissent among its employees, including, but not limited to, by making false claims that the Company "stole" from its employees and that their bonuses were lower than normal as a result.

77.    As a direct and proximate result of Jones' breaches of its obligations to act in good faith and to deal fairly under the Employment Agreement and HR Policy, the Company has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Fraud

### (Against Defendant Jones)

78.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

79.    In late 2022 into early 2023, in personal conversations, calls, and during meetings, Jones intentionally misrepresented facts to employees, officers, and/or representatives of the Company, and/or concealed material facts to them, including but not limited to that: (a) the Company was "stealing" from its employees and that employee compensation was lower-than-normal as a result; (b) if the Company employees left the Company and joined Renegade Energy, they would receive larger bonuses and higher pay as there would be more money after the Company was out of the way and no longer "stealing" from them; (c) the Company did not intend to conduct business in California anymore; (d) as a result, the Company had approved the conversion of its business into a new entity that would be operated by Jones, Renegade Energy, and in fact, that Jones had a "handshake" deal with the Company reflecting this; (e) the new and now-competing Renegade Energy would be authorized to conduct business out of 825 W. 16th St., Newport Beach, CA 92663, which would be its local office; and (f) the Company employees

could be asked to work on Jones' personal house and would be paid and reimbursed by the Company as a result.

80.     Moreover, in January 2022, prior to entering the Employment Agreement and agreeing to the HR Policy, Jones intentionally misrepresented facts to the Company employees, officers, and/or representatives, and/or concealed material facts from them, including but not limited to that: (a) Jones would not form and/or join an entity that competed with the Company; (b) Jones would not misappropriate or misuse the Company's trade secrets, including its customer list and/or business plan; (c) Jones would not solicit or encourage the Company employees to join any competing entity; (d) Jones would not disclose and/or misuse the Company's confidential information and would not use it for improper purposes, such as to help any competing business.  Jones did not reveal his fraudulent intentions at any time.  Rather, the Company learned of this information through a whistleblower.  Thus, the Company could not have discovered them before that time, as Jones undertook several steps to keep the Company in the dark as alleged herein.

81.     Jones' aforementioned misrepresentations were false.  Jones knew that the representations were false when made, or Jones made the representations recklessly and without regard for their truth.  To the extent that any such underlying fact or representation was concealed, Jones intentionally concealed any such fact and/or failed to disclose any such fact while under a duty to do so.

82.     Jones intended for Plaintiff to rely on his representations and/or concealments.  Jones knew that as a result of his representations and/or concealments, Plaintiff would entrust a significant position and the management of the California office to him, commensurate with a notable salary and bonuses, which would grant him necessary discretion to operate the Company and oversee the business of its employees, and would allow him to access and utilize Company funds in order to run the local business.

83.     Plaintiff reasonably relied on the representations made by Jones.  For the representations that Jones made prior to his employment, Plaintiff had no reason to doubt these as Jones had a history of several years of successful and responsible employment with the Company and the core representations, that Jones would not breach the Employment Agreement or HR Policy and would not create a competing business and try to poach Company employees.  For the representations that Jones made in late 2022 and early 2023 to the Company employees and representatives, relevant employees and representatives had no reason to doubt them either; Jones was their superior and had broad discretion to run the local office and direct their work.  Had Jones not made the representations set forth above, Plaintiff would not have promoted Jones to serve as the Company's Division Manager for the Company, would not have given him the significant salary and discretion that came with this position, would not have given him access to Company confidential information and trade secrets, would not have given him the same level of control over the Company employees, and would have discharged him sooner.

84.     Moreover, Jones acted to conceal and cover up the true nature of his false representations and/or concealments in an attempt to prevent the Company from discovering them.  To keep the Company's upper management in the dark surrounding his fraudulent allegations, Jones isolated and siloed off the California operations groups from the head office and instructed employees to not contact the head office of the Company.  Further, when relevant Company officials came into the California office for on-site visits, Jones instructed various Company employees to not come into work that day.

85.     Plaintiff was harmed by Jones' false representations and/or concealments, and Plaintiff's reasonable reliance on the representations was a substantial factor in causing the harm.  Such harm includes, but is not limited to: hiring Jones as the Company's Division Manager and giving him a six-figure salary and notable bonuses; loss of business due to his creation of a new, competing entity,

Renegade Energy; confusion from the Company's existing and potential customers as to the correct entity for their high-voltage service needs, as Jones reached out to these customers and represented that he was authorized to carry out the Company's business going forward; confusion among the Company's employees as to which entity was authorized to conduct business going forward and whether the Renegade Energy entity was authorized by the Company; due to the confusion Jones sowed as to the Company's business and whether certain projects, which only benefited Jones, were authorized by the Company, loss of productivity by the Company's employees; loss of funds by Jones' improper payment of overtime and leaves of absence to curry favor among employees and his expensing and reimbursement of items that were not permitted by the Company, such as Jones' work on his own personal home.

86.    Alternatively, to the extent any of the above misrepresentations were not false when made but later became false, then: (a) Jones was in a fiduciary relationship to the Company by virtue of his high-level discretionary management role, and also owed the Company a duty of undivided loyalty; (b) Jones intentionally failed to disclose that the representations he had made earlier had become false, as well as failed to disclose certain facts that were known only to Jones and could not have been discovered by Plaintiff; (c) Plaintiff was unaware of the concealed facts; (d) Jones intended to deceive Plaintiff by concealing such facts; (e) had Jones disclosed the concealed facts, Plaintiff would have behaved differently; (f) Plaintiff was harmed by Jones' non-disclosure; and (g) Jones' concealment was a substantial factor in causing Plaintiff's harm.

87.    Plaintiff should be compensated for its injuries in the form of compensatory damages, and Jones should be required to pay punitive damages to penalize him for his fraudulent conduct and to deter him from engaging in such conduct in the future.

/ / /

**FOURTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(Against Defendant Jones)**

88.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

89.     In late 2022 into early 2023, in personal conversations, calls, and during meetings, Jones misrepresented facts to the Company's employees, officers, and/or representatives, including but not limited to that: (a) the Company was "stealing" from its employees and that employee compensation was lower-than-normal as a result; (b) that if the Company employees left the Company and joined Renegade Energy, they would receive larger bonuses and higher pay as, Jones falsely misrepresented, there would be more money after the Company was out of the way and no longer stealing from them; (c) the Company did not intend to conduct business in California anymore; (d) as a result, that the Company had approved the conversion of its business into a new entity that would be operated by Jones, Renegade Energy, and in fact, that Jones had a "handshake" deal with the Company reflecting this; (e) that the new and now-competing Renegade Energy would be authorized to conduct business out of 825 W. 16th St., Newport Beach, CA 92663, which would be its local office; and (f) the Company employees could be asked to work on Jones' personal house and would be paid and reimbursed by the Company as a result.

90.     Jones' aforementioned misrepresentations were false. Jones should have known that the representations were false when made, and Jones was therefore negligent with regards to their truth.

91.     Jones intended for Plaintiff to rely on his representations and/or concealments. Jones knew that as a result of his representations and/or concealments, Plaintiff would entrust a significant position and the management of the California office to him, commensurate with a notable salary and bonuses,

1    would grant him necessary discretion to operate the California office and oversee

2    the business of its employees, and would allow him to access and utilize Company

3    funds in order to run the local business.

4         92.    Plaintiff reasonably relied on the representations made by Jones.  For

5    the representations that Jones made prior to his employment, Plaintiff had no reason

6    to doubt these as Jones had a history of several years of successful and responsible

7    employment with the Company and the core representations, that Jones would not

8    breach the Employment Agreement or HR Policy and would not create a competing

9    business and try to poach Company employees.  For the representations that Jones

10   made in late 2022 and early 2023 to the Company employees and representatives,

11   relevant employees and representatives had no reason to doubt them either; Jones

12   was their superior and had broad discretion to run the local office and direct their

13   work.  Had Jones not made the representations set forth above, Plaintiff would not

14   have promoted Jones to serve as the Company's Division Manager for the

15   Company, would not have given him the significant salary and discretion that came

16   with this position, would not have given him access to Company confidential

17   information and trade secrets, would not have given him the same level of control

18   over the Company employees, and would have discharged him sooner.

19        93.    Plaintiff was harmed by Jones' false representations and/or

20   concealments, and Plaintiff's reasonable reliance on the representations was a

21   substantial factor in causing the harm.  Such harm includes, but is not limited to:

22   hiring Jones as the Company's Division Manager and giving him a six-figure salary

23   and notable bonuses; loss of business because of his creation of a new, competing

24   entity, Renegade Energy; confusion from the Company's existing and potential

25   customers as to the correct entity for their high-voltage service needs, as Jones

26   reached out to these customers and represented that he was authorized to carry out

27   the Company's business going forward; confusion among the Company's

28   employees as to which entity was authorized to conduct business going forward and

1    whether the Renegade Energy entity was authorized by the Company; due to the

2    confusion Jones sowed as to the Company's business and whether certain projects,

3    which only benefited Jones, were authorized by the Company, loss of productivity

4    by the Company's employees; loss of funds by Jones' improper payment of

5    overtime and leaves of absence to curry favor among employees and his expensing

6    and reimbursement of items that were not permitted by the Company, such as Jones'

7    work on his own personal home.

8         94.    Plaintiff should be compensated for its injuries in the form of

9    compensatory damages, and Jones should be required to pay punitive damages to

10   penalize him for his fraudulent conduct and to deter him from engaging in such

11   conduct in the future.

## FIFTH CAUSE OF ACTION

### Violation of the Defend Trade Secrets Act 18 U.S.C. § 1836

### (Against Defendants Jones and Renegade Energy)

15        95.    Plaintiff incorporates by reference as though fully set forth herein the

16   preceding and foregoing allegations of this Complaint.

17        96.    Plaintiff owned and possessed certain proprietary, trade secret and

18   Confidential Information, as alleged above.

19        97.    Information comprising Plaintiff's trade secrets include the items

20   reflected in the foregoing paragraphs, including the following: (a) comprehensive

21   estimating systems and rates for project-specific pricing and execution from start-to-

22   finish; and (b) identities and non-public customer-specific knowledge of the

23   Company's customers, including key relationship contacts, the specific services the

24   customers were interested in, negotiated pricing and discounts, and the specific

25   submarket of customers interested in the narrow field of high-voltage services

26   offered by Company.

27   / / /

28   / / /

98.    These trade secrets relate to products, services used, sold, shipped, and ordered in, or intended to be used, sold, shipped and/or ordered in interstate or foreign commerce.

99.    On information and belief, the proprietary, trade secret and Confidential Information taken and used, acquired by misrepresentation, and continuously used and disclosed thereafter by Defendants constitutes trade secrets as defined in the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

100.    On information and belief, Defendants misappropriated the Plaintiff's trade secrets through continuous fraudulent acquisition and continuous wrongful and fraudulent use and disclosure, through the present, and threaten to further use the misappropriated trade secrets by both selling to customers obtained through using Plaintiff's customer list and non-public customer information and by using the other trade secrets described above in Defendants' business.  The information contained in these materials derives substantial independent economic value by not being generally known the to the public, and specifically by not being known to Plaintiff's competitors.  The information is not generally known within the industry and represents years of research and development.  Plaintiff undertakes all reasonable efforts to maintain the secrecy of its trade secrets and protect Confidential Information from disclosure, including but not limited to use of nondisclosure agreements.

101.    Defendants' misappropriation of the proprietary, trade secret and Confidential Information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

102.    As a direct and proximate result of Defendants' unlawful, tortious conduct, Plaintiff has been damaged and Defendants have been unjustly enriched. This unjust enrichment includes value and profits attributed to the misappropriated information and customer lists, including amounts Defendants saved in research and development costs by using the misappropriated information and customer list and

1   non-public customer information and increased productivity from the use of the

2   misappropriated information and client information.

3       103.   Defendants' conduct and continued use of Plaintiff's trade secrets have

4   caused, and unless enjoined by the Court, will continue to cause, great and

5   irreparable harm and injury to Plaintiff.  Plaintiff has no other adequate remedy at

6   law for such acts and threatened acts.  Plaintiff, therefore, requests that during the

7   pendency of this action, the Court issue a preliminary injunction, and that after trial,

8   the Court issue a permanent injunction, restraining and enjoining Defendants, and its

9   affiliates, subsidiaries, directors, officers, employees, agents and representatives,

10   and anyone acting in concert with them, from: (a) obtaining, using or disclosing

11   Plaintiff's trade secrets for any purpose whatsoever; (b) developing or marketing

12   any products or services that rely on use or disclose any of the proprietary, trade

13   secrets and/or Confidential Information belonging to Plaintiff; and (c) directing

14   Defendants to return immediately all of Plaintiff's property, including Plaintiff's

15   trade secrets, in Defendant's possession, custody or control.

16       104.   Plaintiff is entitled to recovery from Defendants for the damages they

17   have sustained as a result of Defendants' wrongful act as alleged herein in an

18   amount to be determined at trial, but in no event less than $75,000.  Plaintiff is

19   further entitled to recover from Defendants the gains, profits, and advantages it has

20   obtained as a result of its wrongful acts as herein alleged, in an amount to be

21   determined at trial.  Plaintiff is further entitled to an award of exemplary damages

22   and attorney's fees.

23   **<u>SIXTH CAUSE OF ACTION</u>**

24   **Misappropriation of Trade Secrets (California Uniform Trade Secrets Act)**

25   **(Against Defendants Jones and Renegade Energy)**

26       105.   Plaintiff incorporates by reference as though fully set forth herein the

27   preceding and foregoing allegations of this Complaint.

28   / / /

106.   On information and belief, the proprietary and Confidential Information taken and used, acquired by misrepresentation, and continuously used and disclosed thereafter, by Defendants, constitutes trade secrets as defined in California's Uniform Trade Secrets Action, California Civil Code § 3426, et. seq.

107.   Plaintiff owned and possessed certain proprietary, trade secret and Confidential Information, as alleged herein.  Specifically, these trade secrets include, but are not limited to, the following: (a) comprehensive estimating systems and rates for project-specific pricing and execution from start-to-finish; and (b) identities and non-public customer-specific knowledge of the Company's customers, including key relationship contacts, the specific services the customers were interested in, negotiated pricing and discounts, and the specific submarket of customers interested in the narrow field of high-voltage services offered by Company.

108.   On information and belief, Defendants misappropriated the Plaintiff's trade secrets through continuous fraudulent acquisition and continuous wrongful and fraudulent use and disclosure, through the present, and threaten to further use the misappropriated trade secrets by both selling to customers obtained through using Plaintiff's customer list and non-public customer information and by using the other trade secrets described above in Defendants' business.  The information contained in these materials derives substantial independent economic value by not being generally known the to the public, and specifically by not being known to Plaintiff's competitors.  The information is not generally known within the industry and represents years of research and development.  Plaintiff undertakes all reasonable efforts to maintain the secrecy of its trade secrets and protect Confidential Information from disclosure, including but not limited to use of nondisclosure agreements.

109.   As a direct and proximate result of Defendants' unlawful, tortious conduct, Plaintiff has been damaged and Defendants have been unjustly enriched.

1  This unjust enrichment includes value and profits attributed to the misappropriated

2  information, including amounts Defendants saved in research and development costs

3  by using the misappropriated information and increased productivity from the use of

4  the misappropriated information.

5       110.   Defendants' conduct and continued use of Plaintiff's misappropriated

6  trade secrets have caused, and unless enjoined by the Court, will continue to cause,

7  great and irreparable harm and injury to Plaintiff.  Plaintiff has no other adequate

8  remedy at law for such acts and threatened acts.  Plaintiff, therefore, requests that

9  during the pendency of this action, the Court issue a preliminary injunction, and that

10  after trial, the Court issue a permanent injunction, restraining and enjoining

11  Defendants, and their affiliates, subsidiaries, directors, officers, employees, agents

12  and representatives, and anyone acting in concert with them, from: (a) obtaining,

13  using or disclosing Plaintiff's trade secrets for any purpose whatsoever; (b)

14  developing or marketing any products that rely on use or disclose any of the trade

15  secrets and/or proprietary and Confidential Information belonging to Plaintiff; and

16  (c) directing Defendants to return immediately all of Plaintiff's property, including

17  Plaintiff's Confidential Information and trade secrets, in Defendant's possession,

18  custody or control.

19       111.   Defendants' acts were malicious, fraudulent, and oppressive, and were

20  done with conscious disregard of Plaintiff's rights, all within the meaning of

21  California Civil Code § 3294, in that Defendants misappropriated Plaintiff's trade

22  secret information intentionally, knowingly, and with deliberate intent to benefit its

23  business and harm Plaintiff's business.  Plaintiff is entitled to recovery from

24  Defendants for the damages they have sustained as a result of Defendants' wrongful

25  acts as alleged herein in an amount to be determined at trial, but in no event less

26  than $75,000.  Plaintiff is entitled to recover from Defendants the gains, profits,

27  advantages, and unjust enrichment it has obtained as a result of its wrongful acts as

28  herein alleged, in an amount to be determined at trial.  Plaintiff is further entitled to

1  an award of punitive damages and/or treble damages and attorney's fees pursuant to

2  California Civil Code §§ 3426.3(c) and 3426.4.

3      112.   In the event that neither Plaintiff's actual damages nor Defendants'

4  unjust enrichment are subject to proof, Plaintiff is entitled to a reasonable royalty

5  pursuant to California Code Section 3426.3(b).

6  **SEVENTH CAUSE OF ACTION**

7  **Violation of California's Unfair Competition Law, § 17200 *et seq.***

8  **(Against Defendants Jones and Renegade Energy)**

9      113.   Plaintiff incorporates by reference the allegations in the foregoing

10  paragraphs as if fully set forth herein.

11      114.   Jones and Renegade Energy's aforementioned acts constitute unlawful,

12  unfair, and/or fraudulent business acts or practices within the meaning of Cal. Bus.

13  and Prof. Code §§ 17200 *et seq.*, including, but not limited to: (a) organizing a

14  scheme to steal the core business Jones currently worked for at the Company and

15  transition it into an entity, Renegade Energy, under which only he would personally

16  profit; (b) using Company resources, including its employees' time and funds, to

17  achieve this end; (c) lying to Company employees and defaming the Company to

18  paint the Company in a supposed bad light and to make it more likely such

19  employees would be willing to leave the Company and join his new entity at

20  Renegade Energy; (d) organizing Renegade Energy at the same exact address for the

21  business he currently worked for; (e) misappropriating the Company's trade secrets,

22  including its customer list, and contacting current, existing, and potential customers

23  of the Company and trying to convince them to move their business to Renegade

24  Energy; (f) as a result, sowing confusion the Company's about whether Renegade

25  Energy was a continuation of the Company's business and making it more likely

26  that any current, existing, or potential customers would transfer their business, and

27  that any current employees would move their employment over to Renegade

28  Energy; and (g) improperly granting the Company employees overtime and leaves

1  of absence where not warranted so as to curry favor among employees, making them

2  more likely to leave the Company and join Renegade Energy.

3       115.   As a direct and proximate result of Jones' and Renegade Energy's

4  unlawful, unfair, and/or fraudulent business acts or practices, Plaintiff have suffered

5  injury in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### Conversion

### (Against Defendants Jones and Renegade Energy)

9       116.   Plaintiff incorporates by reference the allegations in the foregoing

10  paragraphs as if fully set forth herein

11      117.   The Company has the right to possess its confidential information,

12  including its customer list, and its Company financial resources, including the

13  Company funds in its Company credit card account(s) and/or bank account(s), that

14  was intended to only be used for Company purposes.  The Company's investigation

15  is ongoing and continuing, but upon information and belief, the amount of money in

16  the Company's credit card account(s) and bank account(s) that Jones

17  misappropriated for his personal use exceeds $100,000.

18      118.   Jones substantially interfered with the Company's property rights in the

19  Company financial resources, including money from its bank accounts and/or

20  Company credit card accounts, and both Jones and Renegade Energy substantially

21  interfered with the Company's property rights in the confidential information,

22  including its customer list.  Regarding the Company's financial resources, Jones

23  misappropriated them by spending Company funds on personal projects for himself,

24  including work on his house, as well as falsely approving reimbursements,

25  improperly granting overtime and leaves of absence, and by leaving thousands of

26  dollars in purchases unaccounted for, a substantial amount of which, upon

27  information and belief, the Company alleges were not for proper Company

28  purposes.  Regarding the Company's confidential information, including its

1  customer list, Jones accessed them inappropriately and retained access to them after

2  the Company demanded that he return them, and the Company is informed and

3  believes that Jones still uses this list, on behalf of Renegade Energy, to continue to

4  solicit the Company's customers.

5      119.  To the extent that the Company consented to Jones' taking of the

6  confidential information, such consent was only procured by Jones' fraudulent

7  misrepresentations, concealments, and/or breaches as alleged herein.  Further, the

8  Company did not consent to the improper use of its financial resources and to the

9  extent the Company provided any such consent, Jones exceeded the scope of any

10  consent and/or only procured such consent by his fraudulent misrepresentations,

11  concealments, and/or breaches as alleged herein.

## NINTH CAUSE OF ACTION

### Defamation *Per Se* and Defamation *Per Quod*

### (Against Defendant Jones)

15      120.  Plaintiff incorporates by reference the allegations in the foregoing

16  paragraphs as if fully set forth herein.

17      121.  Beginning in or around October 2022, as set forth above and

18  incorporated herein, Jones made several false statements and implicitly false

19  accusations concerning Plaintiff to Plaintiff's employees and later, Plaintiff's

20  customers.  Plaintiff's customers and employees reasonably understood that Jones'

21  statements concerned Plaintiff; the statements either specifically referenced Plaintiff

22  or used certain terms, characterizations, or descriptions that they could be

23  reasonably inferred as referring to Plaintiff.

24      122.  Jones' statements are defamatory as they expose Plaintiff to hatred,

25  contempt, ridicule, or obloquy, and cause Plaintiff to be shamed or avoided, or tend

26  to injure Plaintiff in their occupation and operation of high-voltage business.

27      123.  Jones' statements are also defamatory per se because they are

28  defamatory of Plaintiff without the need of explanatory matter as they accuse

1  Plaintiff of committing or participating criminal activity and suggest that Plaintiff is

2  unfit to carry out its business, trade, or profession.  Although Plaintiff need not

3  plead and prove special damages as a proximate result of these statements, Plaintiff

4  is able to do so.

5      124.   Jones made these statements with actual malice – *i.e.*, with knowledge

6  of their falsity, or alternatively, with a reckless disregard for their falsity.

7      125.   As a direct and proximate result of Jones' false statements, Plaintiff has

8  suffered irreparable harm to their professional reputations and goodwill.  Moreover,

9  as a direct and proximate result of Jones' false statements, Plaintiff has suffered and

10  continue to suffer money damages, including lost revenue and increased costs, in an

11  amount to be determined at trial.  These damages flow from, among other things,

12  lost potential and/or existing customers, confused potential and/or existing

13  customers, as well as the market generally, about the existence of any affiliation

14  between Plaintiff and Renegade Energy, and lost employees who left Plaintiff and

15  joined Renegade Energy based on the false representations that Jones made

16  concerning Plaintiff.

17      126.   Jones also acted with oppression, fraud, or malice as defined by

18  California Civil Code § 3294 and, as a result, Plaintiff should be permitted to

19  recover punitive and/or exemplary damages in an amount to be determined at trial.

20  **<u>TENTH CAUSE OF ACTION</u>**

21  **Intentional Interference with Contractual Relations**

22  **(Against Defendants Jones and Renegade Energy)**

23      127.   Plaintiff incorporates by reference the allegations in the foregoing

24  paragraphs as if fully set forth herein.

25      128.   Plaintiff has a contractual relationship with its employees, customers,

26  and third-party vendors, which were intended to provide, and which has provided,

27  each of them with substantial economic benefit.  Specifically, these contractual

28  relationships include, but are not limited to, the following: (a) Southern California

Edison, including via its Master Service Agreement and associated commodity codes; (b) Marathon Petroleum, Phillips 66, Marathon Oil, PBF Energy, Martinez, San Diego Gas & Electric, including their respective plant MSA and/or work agreements; and (c) current and former employees of the Company, including via their employment agreements.

129. Jones knew of these contractual relationships and knew that Plaintiff derived substantial economic benefit from these contractual relationships.

130. Plaintiff is informed and believes, and on that basis alleges, that Defendants used Plaintiff's trade secrets, including its customer list and non-public customer information, and business processes, and used the trade secrets to contact Plaintiff customers and disrupt Plaintiff's contract and valuable economic relationships with these third parties.

131. As a result of the wrongful conduct of Defendants as alleged herein, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

132. Plaintiff is informed and believes, and on that basis alleges, that Defendants actions as alleged here were willful, malicious, and fraudulent. Plaintiff is informed and believes, and on that basis alleges, that Defendants acted in the manner alleged herein with the intention of causing injury to Plaintiff and with a willful and conscious disregard for Plaintiff's rights.

## ELEVENTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage.

### (Against Defendants Jones and Renegade Energy)

133. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

134. Plaintiff enjoys an economic relationship with multiple customers and suppliers that would likely have resulted in more substantial economic benefit to Plaintiff but for Jones and Renegade Energy's wrongful conduct as alleged herein.

135.   Defendants knew of the relationships between Plaintiff and Marathon Power Inc., Southern California Edison, and Mitsubishi Electric.

136.   Defendants intended to disrupt, and did disrupt, the economic relationship between Plaintiff and Marathon Power Inc., Southern California Edison, and Mitsubishi Electric by making false and misleading statements to these third parties regarding the Company.

137.   As a result of the wrongful conduct Defendants as alleged herein, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at the trial of this action.

138.   Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions as alleged herein were willful, malicious, and fraudulent. Plaintiff is informed and believes, and on that basis alleges, that Defendants acted in the manner alleged herein with the intention of causing injury to Plaintiff and with a willful and conscious disregard for Plaintiff's rights.  Plaintiff is further informed and believes, and on that basis alleges, that Defendants acted to intentionally concealed his operations and conduct from Plaintiff and also the third parties he was contacting because Defendants feared if Defendants' true identity had been known, the third parties contacted would have informed Plaintiff and others of Defendants' wrongful actions and that Defendants would thereby have been prevented from proceeding further with those actions.  Plaintiff is therefore informed and believes, and on that basis alleges, that Defendants acted fraudulently in order to implement and perpetuate the scheme and cause injury to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages from Defendants.

## TWELFTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

### (Against Defendants Jones and Renegade Energy)

139.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

140.   Plaintiff enjoys an economic relationship with multiple customers and suppliers that would likely have resulted in more substantial economic benefit to Plaintiff but for Jones and Renegade Energy's wrongful conduct as alleged herein.

141.   Defendants knew of the relationships between Plaintiff and Marathon Power Inc., Southern California Edison, and Mitsubishi Electric and was aware that if they did not act with due care in their action, those actions would interfere with Plaintiff's relationships and cause Plaintiff to lose in whole or in part the probably future economic benefit or advantage of the relationships.

142.   Defendants acted negligently and, as a result, disrupted the economic relationship between Plaintiff and Marathon Power Inc., Southern California Edison, and Mitsubishi Electric by making false and misleading statements to these third parties regarding Plaintiff's viability as a company, including, but not limited to, by making false claims that the Company "stole" from its employees and that their bonuses were lower than normal as a result.

143.   Defendants' negligence caused damage to Plaintiff in that the relationships were interfered with and/or disrupted and Plaintiff lost in whole or in part the economic benefits or advantage reasonable expected from the relationship.

## THIRTEENTH CAUSE OF ACTION

### Inducing Breach of Contract

### (Against Defendants Jones and Renegade Energy)

144.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

145.   Plaintiff was in the following valid contractual relationships: (a) Southern California Edison, including via its Master Service Agreement and associated commodity codes; (b) Marathon Petroleum, Phillips 66, Marathon Oil, PBF Energy, Martinez, San Diego Gas & Electric, including their respective plant MSA and/or work agreements; and (c) current and former employees of the Company, including via their employment agreements.

146.    Jones knew of these existing contracts by virtue of his access to this information during his tenure as an employee.  Jones had intimate knowledge of each of these agreements and their terms.

147.    Defendants engaged in conduct, including communicating with these third parties and communicating harmful misinformation about the viability of Plaintiff's business, in order to induce these third parties to breach their contracts with Plaintiff and enter into new contracts with Defendants.

148.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions as alleged herein were willful, malicious, and fraudulent. Plaintiff is informed and believes, and on that basis alleges, that Defendants acted in the manner alleged herein with the intention of causing injury to Plaintiff and with a willful and conscious disregard for Plaintiff's rights.  Plaintiff is further informed and believes, and on that basis alleges, that Defendants acted to intentionally concealed their operations and conduct from Plaintiff and also the third parties he was contacting because Defendants feared if Defendants' true identity had been known, the third parties contacted would have informed Plaintiff and others of Defendants' wrongful actions and that Defendants would thereby have been prevented from proceeding further with those actions.  Plaintiff is therefore informed and believes, and on that basis alleges, that Defendants acted fraudulently in order to implement and perpetuate the scheme and cause injury to Plaintiff. Plaintiff is therefore entitled to recover punitive and exemplary damages from Defendants.

## FOURTEENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Defendants Jones and Renegade Energy)

149.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

/ / /

150.   As a result of the above described intentional and negligent conduct, Defendants now improperly hold onto money and rights rightfully belonging to Plaintiff.  In the interest of equity and fairness, Defendants must be prevented from receiving, retaining, and appropriating such monies and benefits.

151.   As a result, Defendants have been unjustly enriched in an amount to be determined at trial.

### FIFTEENTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against Defendants Jones and Renegade Energy)**

152.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

153.   As a high-level manager with discretionary authority, Jones owed the Company a fiduciary duty.

154.   While owing the Company a fiduciary duty, Jones acted against Plaintiff's best interests through the conduct described above, and acted for his own benefit and for the benefit of Renegade Energy.

155.   Upon information and belief, Renegade Energy is jointly liable for the breaches committed by Jones because it is his alter ego, and because Renegade Energy has aided and abetted Jones' breaches because it knew of Jones' conduct and has given substantial assistance and encouragement to Jones to engage in the breaches of fiduciary duty.

156.   Company did not give informed consent to Jones' conduct; indeed, Jones actively concealed his conduct from Company.

157.   Company was harmed by Jones' conduct in an amount to be proven at trial, and Jones' conduct was a substantial factor in causing such harm.

158.   As a result of the wrongful conduct of Defendants as alleged herein, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at the trial of this action.

159.   Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions as alleged here were willful, malicious, and fraudulent. Plaintiff is informed and believes, and on that basis alleges, that Defendants acted in the manner alleged herein with the intention of causing injury to Plaintiff and with a willful and conscious disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages against Defendants.

### SIXTEENTH CAUSE OF ACTION

**Breach of Duty of Loyalty**

**(Against Defendants Jones and Renegade Energy)**

160.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

161.   As an employee of Company, Jones owed the Company a duty of undivided loyalty.

162.   While owing the Company a duty of loyalty, Jones acted against Plaintiff's best interests through the conduct described above, and acted for his own benefit and for the benefit of Renegade Energy.

163.   Upon information and belief, Renegade Energy is jointly liable for the breaches committed by Jones because it is his alter ego and because Renegade Energy has aided and abetted Jones' breaches because it knew of Jones' conduct and has given substantial assistance and encouragement to Jones to engage in the breaches of his duty of loyalty.

164.   Company did not give informed consent to Jones' conduct; indeed, Jones actively concealed his conduct from Company.

165.   Company suffered damages proximately caused by Jones' breaches in an amount to be proven at trial.

166.   Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions as alleged here were willful, malicious, and fraudulent. Plaintiff is informed and believes, and on that basis alleges, that Defendants acted in

1  the manner alleged herein with the intention of causing injury to Plaintiff and with a

2  willful and conscious disregard for Plaintiff's rights.  As such, Plaintiff is entitled to

3  an award of punitive damages against Defendants.

## **PRAYER FOR RELIEF**

5      Wherefore, Plaintiff prays for judgment as follows:

6      1.    For damages against Defendants Jones and Renegade Energy according

7  to proof at trial;

8      2.    For punitive and exemplary damages against Defendants Jones and

9  Renegade Energy according to proof at trial;

10      3.    An award of specific performance and/or appropriate injunctive relief

11  prohibiting Defendants Jones and/or Renegade Energy from accessing, retaining,

12  and/or using the Company's confidential information and/or trade secrets;

13      4.    For disgorgement and/or restitution of all compensation paid during or

14  otherwise attributable to Jones' period of disloyalty to the Company;

15      5.    For costs and attorney's fees of the action herein; and

16      6.    For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

18      Plaintiff demands a trial by jury on all matters so triable.

19

20  Dated:  July 11, 2023        **DLA PIPER LLP (US)**

21

22  By: */s/Kevin D. Harlow*

    KEVIN D. HARLOW

23      RYAN M.ESTES

    KRISTINA FERNANDEZ MABRIE

24      MICHAEL P. BROWN

25      Attorneys for Plaintiff, Rising Edge

    Technologies (California), LLC

26

27

28